UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 05-379-C**

**SKYWAY USA, INC.,**                                                                                              **PLAINTIFF,**

**V.**                             **MEMORANDUM OPINION AND ORDER**

**SYNERGISTIC COMMUNICATIONS
LLC, ET AL.,**                                                                                                         **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on defendants Star Connect, LLC and Timothy Peabody's motion to dismiss for lack of personal jurisdiction and defendant Jeffrey Nesbit's motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief may be granted.  DE 55; DE 56.  The court, having reviewed the record and being otherwise sufficiently advised, will deny both motions.

**I.     Background**[1]

The plaintiff, Skyway USA, Inc. ("Skyway"), is a Kentucky corporation with its primary business office in Louisville, Kentucky.  As part of its business, Skyway

---

[1] Because there has not been an evidentiary hearing on the substance of these motions, the court must consider the facts "derive[d] from the pleadings and affidavits, taken in the light most favorable to Plaintiff, and without considering Defendants' version of any disputed facts." *Papa John's Int'l, Inc. v. Entm't Mktg. & Commc'ns Int'l, Ltd.*, 381 F. Supp. 2d 638, 639 (W.D. Ky. 2005) (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998)).

1

provides rural customers with Internet access via satellite. Skyway does business with companies holding satellite "connectivity" in order to provide Internet access to its customers.

Internet Satellite Platform, Inc. ("ISAT") is among the companies with which Skyway has previously done business in order to gain the satellite connectivity necessary to its business. ISAT filed bankruptcy and its assets were purchased from the bankruptcy trustee by Synergistic Communications, LLC ("Synergistic") in 2005. Included among these assets were computers containing contact, account, and billing information for Skyway's customers. Synergistic was formed in Tennessee on December 9, 2004, and was recognized in Florida as a foreign LLC on March 18, 2005, with its address the same as ISAT's former address in Altamonte Springs, Florida. Synergistic posted on its website that it was a "privately owned subsidiary of Shiloh Communications." DE 62-3. Shiloh Communications, Inc., posted on its website that "Synergistic Communications, LLC (SynComm) has acquired ISAT and all of its assets as of Friday, November 26, 2004" and that "[w]e welcome ISAT to the Shiloh Media Group family." DE 62-4. Shiloh Media Group, LLC was formed by Nesbit, and the Nevada Secretary of State lists Nesbit and Gerald Drummonds as presidents of Shiloh Communications, Inc. DE 62-2.

Beginning at or about 5:42 p.m. Eastern Standard Time on the afternoon of May 20, 2005, Skyway's customers, approximately 199 of whom resided in

Kentucky, received a message from Synergistic when they accessed their accounts. The messages read, in relevant part:

> You are receiving this message from Synergistic Communications, LLC ("Synergistic"). Synergistic was the wholesale satellite Internet provider to Skyway USA. Skyway USA is no longer a reseller of satellite Internet service that is provided by Synergistic.
>
> As an end-user, you have the option of continuing your satellite Internet service with us by clicking on the "I Have Read . . ." button below. This will transfer your account to our retail branch; [*sic*] Bright Star Internet and allow you to immediately continue surfing the Internet using your satellite service.

DE 44-4, at 3. The "buttons" at the bottom of this message stated, "I have read and understand this message, and would like to continue service" and "No Thanks, I'd like to Cancel My Account." DE 44-4, at 3. Soon thereafter, Synergistic began billing Skyway's customers and charging their credit cards.

On June 16, 2005, the Jefferson Circuit Court enjoined Synergistic from contacting Skyway's customers, former customers, and business partners. DE 1-4. On June 24, 2005, Synergistic removed the matter to this court and, on July 20, 2005, Synergistic's counsel moved to withdraw because Synergistic notified them of its intention to retain different counsel. DE 7. On August 17, 2005, Synergistic, represented by new counsel, filed an answer and counterclaim and admitted the plaintiff's allegation in its original complaint that Synergistic was "conducting business in the Commonwealth of Kentucky to include Jefferson County, Kentucky." DE 15, at 1. *See also* DE 1-2, at 1. Synergistic's new counsel moved to withdraw on December 2, 2005, stating that he had been

informed that Synergistic was "no longer a functioning entity . . . [and that he could not] effectively communicate with [Synergistic]." DE 27. Among the parties Synergistic's counsel served with copies of his notice to withdraw was defendant Timothy Peabody of the Peabody Law Office in Irvine, California.

At some point, Synergistic's assets were transferred to Star Connect, LLC ("Star Connect"),[2] after which Synergistic "vanished as an entity and a party to these proceedings," with it appearing "that the officers of the company simply 'moved on'" without filing bankruptcy. DE 62, at 4. On March 6, 2006, the court entered a default judgment against one of these individuals, Hector Rosa. DE 31.

On May 3, 2007, after Synergistic ceased to be an active participant in this litigation, the plaintiff deposed Peabody in Newport Beach, California. Peabody stated in deposition that the people behind Synergistic were Drummonds, Bill Davis, Bruce Taylor, and Nesbit, "the same guys on [the plaintiff's] proof of service."[3] DE 62-5, at 3. Moreover, in his answer, Drummonds stated that "Nesbit was one of the three original owners and served as an officer of Synergistic Communications, LLC from 2004 to 2005." DE 46, at 2. At his deposition, Peabody did not tender any of the documents requested in the plaintiff's subpoena, including "documents relating to the alleged acquisition by Star Connect, LLC (Mr. Peabody's company) of

---

[2] Defendants Star Connect and Peabody note that the company is actually named "Starconnect, LLC," but continue to refer to the company as "Star Connect" for the sake of simplicity. DE 55-2, at 3 n.1. The court will follow their lead.

[3] Nesbit was noticed with the summons for Peabody's deposition. DE 45, at 2.

4

the ISAT/Synergistic assets which had allegedly been taken or aquired by Nautilus Asset Management" and "[t]he full listings of all customer accounts, client, or individual contact information obtained initially by Synergistic Communications in the Florida Bankruptcy action involving Internet Satellite Platform, Inc."  DE 61-3.

Despite his non-production of the documents requested by the plaintiff, Peabody asserts that he first came into contact with Synergistic "as an attorney holding the position of General Counsel for Nautilus Asset Management Group, LLC," a creditor of Synergistic, and arranged for the transfer of Synergistic's assets to Star Connect to settle Synergistic's debts to Nautilus, at which point they were combined with those of another Florida company.  DE 55-2, at 3.  Peabody also asserts that he formed Star Connect on November 5, 2005, after Nautilus obtained Synergistic's assets and that they "were merged with the assets of another Florida company that provided software for satellite connectivity."  DE 55-2, at 3.

The plaintiff's amended complaint, filed on October 8, 2007, asserts the following claims: (1) theft by unlawful taking; (2) tortious interference with contractual relations; (3) violation of the Uniform Trade Secrets Act, KRS § 365.880 *et seq.*; (4) individual liability of the owners, managers and directors of Synergistic and Star Connect; (5) successor liability of Star Connect; and (6) punitive damages.  DE 44, at 15-21.

**II.    Motion to Dismiss for Lack of Personal Jurisdiction**

Defendants Star Connect, Peabody, and Nesbit move to dismiss the claims

5

against them in the amended complaint on the grounds that the court does not have personal jurisdiction over them.

### A. Legal Standard

In considering a motion to dismiss for lack of personal jurisdiction where there has not been an evidentiary hearing on the issue, the court must consider the facts "derive[d] from the pleadings and affidavits, taken in the light most favorable to Plaintiff, and without considering Defendants' version of any disputed facts." *Papa John's*, 381 F. Supp. 2d at 639; *see also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  "'To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.'" *Dean*, 134 F.3d at 1272 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).[4]

### B. Kentucky's Long-Arm Statute

---

[4] There is a narrow exception to the requirement that a plaintiff must only make a prima facie showing of personal jurisdiction.  If there is "no 'real dispute' as to the facts or to the extent of discovery[,] . . . it would be a waste of resources to conduct an evidentiary hearing [and] . . . [i]n such cases, plaintiffs face the same burden as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence." *Id.* (citations omitted).  This exception was applied in *Int'l Technologies Consultants, Inc. v. Euroglas, S.A.*, 107 F.3d 386 (6th Cir. 1997) because "the plaintiff . . . received all of the discovery it sought with respect to personal jurisdiction and there [did] not appear to be any real dispute over the facts relating to jurisdiction." *Id.* at 391 (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 980 (6th Cir. 1992)).  The court finds that this exception is not applicable to the present case because the plaintiff has not "received all of the discovery it sought with respect to personal jurisdiction," such as the materials the plaintiff requested Peabody bring to his deposition, and a "real dispute" exists as to a number of facts.  Defendants Peabody and Star Connect are incorrect that the non-production of these documents is "irrelevant to the pending motion." DE 65, at 4.  Consequently, the plaintiffs must make only a prima facie showing of personal jurisdiction.

6

"In order to determine whether personal jurisdiction exists over a nonresident defendant in a diversity action," such as the matter at hand, the court "must apply the law of the state in which it sits, subject to due process limitations." *Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F. Supp. 761, 762 (W.D. Ky. 1997) (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). "The Sixth Circuit interprets Kentucky's long-arm statute as extending to the limits of Due Process"; in essence, the Kentucky "legislature has designed the long-arm statute to ensure that non-resident defendants have 'minimum contacts' with Kentucky 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Auto Channel*, 955 F. Supp. at 764 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Therefore, the court's examination of Kentucky's long-arm statute dovetails with its inquiry into "whether Due Process permits the exercise of personal jurisdiction." *Papa John's*, 381 F. Supp. 2d at 641.

**C.     Due Process**

"To determine whether the defendant has the requisite minimum contacts," the court must apply a familiar three-part test: (1) "'the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state'"; (2) the plaintiff's "'cause of action must arise from the defendant's activities there'"; and (3) "'the acts of the defendant or consequences caused by the defendant must have a substantial enough connection

7

with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Papa John's*, 381 F. Supp. 2d at 641 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1998)). *See also Info-Med, Inc. v. Nat'l Healthcare, Inc.*, 669 F. Supp. 793, 795-96 (W.D. Ky. 1987); *Friction Materials, Inc. v. Stinson*, 833 S.W.2d 388, 390 (Ky. 1992) (citing *Mohasco*, 401 F.2d at 381).

As outlined in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984), personal jurisdiction can be either "specific" or "general." "Specific jurisdiction exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum." *Bradley v. Mayo Foundation*, 1999 WL 1032806, at *5 (E.D. Ky. Aug. 10, 1999) (citing *Kerry Steel, Inc. v. Paragon Industries*, 106 F.3d 147, 149 (6th Cir. 1997)) (internal quotation marks omitted). "General jurisdiction ordinarily attaches when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* (citing *Nat'l Bank of Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1090 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990)) (internal quotation marks omitted).

### D. Purposeful Availment

"The 'sine qua non' of personal jurisdiction is the purposeful availment factor, under which the defendant must 'purposefully avail[] itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Dean*, 134 F.3d at 1273 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "The 'purposeful availment' prong of the *Mohasco* analysis is satisfied when the defendant's contacts with the forum state are such that 'he should reasonably anticipate being haled into court there.'" *Papa John's*, 381 F. Supp. 2d at 641 (quoting *Burger King*, 471 U.S. at 475).

Under this analysis, the plaintiff has made out a prima facie case that Synergistic purposefully availed itself of the privilege of conducting business in Kentucky when it contacted the plaintiff's customers on May 20, 2005, and subsequently began billing them and charging their credit cards.

### 1. Star Connect and Peabody

The gravamen of the plaintiff's argument that the court has personal jurisdiction over the defendants is the contention that Synergistic was a "sham corporation" and that "*each* of the named individual defendants stand in the same shoes as their company, Synergistic, for purposes of jurisdiction." DE 62, at 10 (emphasis in original). In support of this contention, the plaintiff offers KRS § 502.060 "in tandem with" KRS § 446.070, the theory of "successor liability," and the theory of "piercing the corporate veil." DE 62, at 10.

"When the sale of a corporation is a bona fide transaction, and the selling corporation receives money to pay its debts or property that may be subjected to the payment of its debts and liabilities, the purchasing corporation will not, in the

absence of a contract obligation or fraud, be held responsible for the debts or liabilities of the selling corporation." *Parker v. Henry A. Petter Supply Co.*, 165 S.W.3d 474, 479 (Ky. Ct. App. 2005) (citing *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46 (Ky. 2002)). This general rule precluding successor liability has four exceptions:

> (1) where the purchaser expressly or impliedly agrees to assume such debts or other liabilities;
>
> (2) where the transaction amounts to a consolidation or merger of the seller and purchaser;
>
> (3) where the purchasing corporation is merely a continuation of the selling corporation; or
>
> (4) where the transaction is entered into fraudulently in order to escape liablity for such debts.

*Id.* (citations omitted).

The defendants offer affidavits, assertions, and Peabody's deposition testimony in support of their position that the acquisition of Synergistic's assets by Star Connect was a bona fide transaction and not (1) a mere continuation of Synergistic under another name and (2) a consolidation or merger of Synergistic and Star Connect.[5] Moreover, Peabody did not bring to his deposition documents requested by the plaintiff regarding the relationship of Synergistic and Star Connect. Given the plaintiff's light burden, the defendants' affidavits, deposition testimony, and assertions are insufficient to defeat jurisdiction before trial and

---

[5] The court will not reach the plaintiff's allegations of fraud at this point because it need not do so for purposes of this motion.

absent a jurisdictional hearing because "[a]ny other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing *Data Disc., Inc. v. Sys. Tech. Ass'ns, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

*Parker* provides sufficient legal grounds to support a prima facie case that Star Connect, a company organized by Peabody, either (1) resulted from a consolidation or merger of Synergistic and Star Connect or (2) is merely a continuation of Synergistic. In either case, defendants Star Connect and Peabody have purposefully availed itself of the privilege of doing business in Kentucky. Therefore, the plaintiff has satisfied its burden by making out a prima facie case that Synergistic was "doing business" in Kentucky on May 20, 2005, when it sent the message to Skyway's customers, some of whom were Kentucky residents, and that Star Connect and Peabody should have anticipated being "haled into court" in Kentucky for these actions.

    2.    *Nesbit*

The plaintiff has provided print-outs from websites stating that Synergistic was a subsidiary of Shiloh Communications and suggesting that Synergistic was part of "the Shiloh Media Group family."[6] Information from the Nevada Secretary

---

[6] Nesbit argues, without citing any authority, that information from a website is inherently unreliable and that the specific postings are unsubstantiated and inadmissible. DE 67, at 3. This argument is unconvincing because postings on websites are not inherently unreliable, can be substantiated, and may be admissible

of State's website suggests that Nesbit was a president of Shiloh Communications; defendant Drummonds in his answer to the amended complaint stated that Nesbit was an original owner and officer of Synergistic from 2004 to 2005; and Peabody testified in deposition that there was "obviously some relation between" Shiloh Communications, which he stated was Nesbit's company, and Synergistic. Therefore, the plaintiff has made out a prima facie case that Nesbit was a president of Synergistic's parent company and an owner and officer of Synergistic during 2005. Because the plaintiff has also made out a prima facie case that Synergistic purposefully availed itself of the benefits and protections of the laws of Kentucky, the only remaining question is whether his apparent office with Shiloh can make Nesbit liable for the activities of Synergistic.

    The plaintiff offers the same arguments for liability against Nesbit: KRS § 502.060 "in tandem with" KRS § 446.070, and the theory of "piercing the corporate veil." The evidence provided by the plaintiff is sufficient to make out a prima facie case that Nesbit was directly liable for the actions of Synergistic as an owner through the theory of "piercing the corporate veil," which applies in

---

if they are properly authenticated and not otherwise inadmissible. A plaintiff may rely on postings on Internet websites in circumstances, such as these, where the defendant's declaration merely contends that the postings "had no basis in fact," DE 56-3, at 5, and has not otherwise presented evidence the website print-outs are unreliable. Such a contention is merely the defendant's version of disputed facts and may not be considered for purposes of the present motion. *See Papa John's*, 381 F. Supp. 2d at 639. Therefore, considering the print-outs in the context of this motion does not "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (citations omitted).

circumstances where a corporation is not "recognized as an entity which is distinct from its shareholders, officers, and directors" and, therefore, "the rule of limited liability" does not apply. *White v. Winchester Land Dev. Corp.*, 584 S.W.2d 56, 61 (Ky. Ct. App. 1979).

Under the "instrumentality theory" of piercing the corporate veil, a plaintiff must show "(1) that the corporation was a mere instrumentality of the shareholder; (2) that the shareholder exercised control over the corporation in such a way as to defraud or to harm the plaintiff; and (3) that a refusal to disregard the corporate entity would subject the plaintiff to unjust loss." *Id.* at 61. Here, the plaintiff has made out a prima facie case that Synergistic was a mere instrumentality of the shareholders, including Nesbit, through the website print-outs indicating that Synergistic was a privately owned subsidiary of one of Nesbitt's companies, Peabody's testimony that Nesbit was one of those behind Synergistic, and Synergistic's subsequent "disappearance" as an entity. For purposes of this motion, refusing to pierce the corporate veil "would subject the plaintiff to unjust loss" because the plaintiff has made out a prima facie case that Synergistic harmed the plaintiff unlawfully contacting the plaintiff's customers but it is not possible for the plaintiff to maintain an action against Synergistic because it has disappeared. Nesbit offers nothing more than his own version of disputed facts in arguing that he was not a shareholder of Synergistic who attempted to use the corporate form to escape liability from those with claims against Synergistic, such as the plaintiff.

Therefore, the plaintiff has made out a prima facie case that Nesbit should have anticipated being "haled into court" in Kentucky for Synergistic's actions.

### E. Defendant's Activities in Kentucky

"The 'arising from' requirement under the second prong [of the *Mohasco* test] is satisfied when the operative facts of the controversy arise from defendant's contacts with the state." *Calphalon Copr. v. Rowlette*, 228 F.3d 718, 723-24 (6th Cir. 2000) (also noting that "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact'") (quoting *Mohasco*, 401 F.2d at 384, 384 n.29). The court has already determined that the May 20, 2005, message to the plaintiff's customers may be attributed to the defendants for purposes of making out a prima facie showing of personal jurisdiction and the plaintiff had customers in Kentucky who would have received the message. Therefore, the plaintiff has made a prima facie showing that the its complaint "arise[s] from the defendant's activities" in Kentucky. *Papa John's*, 381 F. Supp. 2d at 641.

### F. Reasonableness

"[D]ue process [does not permit] arbitrary assertion of power to bind nonresident defendants with little or no connection to the forum state." *Wilson v. Case*, 85 S.W.3d 589, 597 (Ky. 2002). *International Shoe* established the "minimum contacts" approach, a more "malleable" standard than previous approaches to personal jurisdiction, however, "[i]n apparent answer to the many

developments of transportation and mobility, as well as increased interstate commerce during the last half-century." *Wilson*, 85 S.W.3d at 592 (citing *Int'l Shoe*, 326 U.S. at 316). Internet-based communication and commerce represent yet another step in the time-space compression to which the "minimum contacts" standard of *International Shoe* sought to respond. The plaintiff has made out a prima facie case that defendants Star Connect, Peabody, and Nesbit purposefully availed themselves of the benefits and protections of Kentucky's laws by doing business in Kentucky through Synergistic's May 20, 2005, message to Skyway's Kentucky-based customers. Therefore, the court finds that the exercise of personal jurisdiction over these defendants is not unreasonable.

### G. Additional Considerations

*Wilson* also notes "that no one test is dispositive of minimum contacts." *Wilson*, 85 S.W.3d at 596. The court also should "assess the plaintiff's interest in obtaining relief and the state's interest in adjudicating the dispute, and . . . balance those interests against the burden imposed on the defendant having to litigate in the foreign forum state." *Id.* (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980)). The court finds compelling both Skyway's interest in obtaining relief and Kentucky's interest in adjudicating a dispute involving one of its businesses that arises from conduct alleged to have occurred in Kentucky. These interests are more compelling given the years since the commencement of this suit spent by the plaintiff trying to locate the real parties behind Synergistic. These

factors outweigh the defendants' substantial burden of having to litigate in Kentucky despite not being Kentucky residents.  Consequently, the court will deny both motions to dismiss for lack of personal jurisdiction.

### III.     Motion to Dismiss for Failure to State a Claim

Defendant Nesbit also moves to dismiss the claims asserted against him in the amended complaint on the grounds that the plaintiffs have failed to state a claim upon which relief may be granted.

### A.      Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson,* 335 U.S. 41, 47 (1957)).  In order to avoid a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff has an obligation to provide the grounds of his entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* at 1964-1965.  This does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) (citing *Twombly).*

### B. Analysis

Without citing any authority, Nesbit asserts that the plaintiff has failed to state a claim upon which relief may be granted against him because the plaintiff's amended complaint is based on "blanket assertions against the Defendants collectively" which "have absolutely nothing to do with Mr. Nesbit" and, therefore, the plaintiff "has not alleged facts sufficient to support its conclusion that Mr. Nesbit is individually liable for the acts of the Defendants Synergistic and Star Connect, LLC." DE 56-2, at 13. As detailed above in regard to Nesbit's motion to dismiss for lack of personal jurisdiction, the plaintiff has alleged facts sufficient to support a finding that Nesbit is liable for the actions of Synergistic. Therefore, the court will also deny Nesbit's motion to dismiss under Rule 12(b)(6).

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the motion to dismiss of defendants Star Connect LLC and Timothy Peabody (DE 55) is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to dismiss of defendant Jeffrey Nesbit (DE 56) is **DENIED**.

Signed on August 22, 2008

*Jennifer B. Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**